UNITED STATES of America,
Plaintiff,

v.

UNION CARBIDE CORPORATION, a
New York Corporation, United Steel-
workers of America, AFL–CIO, Local
2958, United Steelworkers of America,
AFL–CIO, Defendants.

Civ. A. 3344–66.

United States District Court
District of Columbia.

Dec. 21, 1966.

Barefoot Sanders, Asst. Atty. Gen.,
Dept. of Justice, Washington, D. C.,
David G. Bress, U. S. Atty., Washington,
D. C., Carl Eardley, Harland F. Leathers,
Irwin Goldbloom, Attorneys, Department
of Justice, Washington, D. C., for plain-
tiff.

Elliot Bredhoff, Washington, D. C.,
Special Counsel, United Steelworkers of
America, for the Unions.

Michael Gottesman and Jerry D. An-
ker, Washington, D. C., for defendant
United Steelworkers of America and its
Local 2958.

George H. Cohen and David E. Feller,
Leonard Lesser, Washington, D. C., for
United Steelworkers.

Nathan Lipson, Pittsburgh, Pa., for
United Steelworkers of America.

PRELIMINARY STATEMENT

LEONARD P. WALSH, District
Judge:

The Government of the United States
petitions the Court for a Preliminary
Injunction against the Union Carbide
Corporation, the United Steelworkers of

America, AFL–CIO, and Local 2958, United Steelworkers of America, AFL–CIO, located in Kokomo, Indiana, where the Haynes Stellite Division of the Union Carbide Corporation are manufacturers of a special high temperature special purpose metal alloy, which is used to fabricate combustion liners used on certain jet planes and blades and vanes which are critical production components of military helicopters. The alloy is known as "Hastelloy X."

Plaintiff prays for an injunction in accordance with the provisions of the Labor-Management Relations Act, 29 U.S.C. § 178, to restrain personnel of Haynes Stellite Division of Union Carbide Corporation at Kokomo, Indiana, from continuing or taking part in any strike or lockout at the plant, and the Union from encouraging, ordering or taking part in any strike at said plant.

This particular matter presents two fundamental questions as set forth in the statute: whether or not the strike or lockout (1) affects an entire industry or a substantial part thereof engaged in trade, commerce, transportation, transmission or communication among the several states or with foreign nations or engaged in the production of goods for commerce; and (2) if permitted to occur or to continue, will imperil the National health or safety.

The Court, after hearing oral argument of counsel and having opportunity to review the pleadings, affidavits and points and authorities submitted herein, finds:

That the strike at the Kokomo plant raises the issue as to what is an "industry" under the provisions of 29 U.S.C. § 178(a) (1) of the Labor-Management Relations Act.

Under Sec. 142 of 29 U.S.C., the term "industry affecting commerce" means "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce."

■ The Court finds that the strike at the Kokomo plant does have a substantial effect on the industry of production of military aircraft engines and therefore is encompassed within the Act.

■ The Court has no difficulty with the second question presented,—that is affecting the national safety,—in view of the evidence submitted.

The Court therefore signs the Order submitted by the plaintiff and the Findings of Fact and Conclusions of Law submitted by plaintiff, the United States of America.

That is to say, the Court grants the Preliminary Injunction.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause having come on for hearing on the motion of the plaintiff for a preliminary injunction, as prayed for in its verified complaint, and the Court having considered all evidence submitted herein, the pleadings, memoranda of law, and arguments of counsel, makes the following Findings of Fact and Conclusions of Law with respect to said application.

### FINDINGS OF FACT

1. On or about September 30, 1966, certain employees of the Union Carbide Corporation (hereinafter referred to as "the corporation") and represented by the following labor organizations:

United Steel Workers of America, AFL-CIO

Local 2958, United Steelworkers of America, AFL-CIO (hereinafter referred to as the Union defendants) commenced a strike against the Corporation.

2. The strike results from an unresolved labor dispute and will be, if permitted to continue, a concerted work stoppage and not the exercise of the rights of individual employees to quit their labor, as provided in Section 502 of the Labor Management Relations Act, 1947.

3. On December 19, 1966 the President of the United States acting under the provisions of Section 206 of the Act

(29 U.S.C. § 176), issued Executive Order No. 11321, whereby he appointed a Board of Inquiry to inquire into the issues involved in said labor dispute. In said Executive Order the President expressed the opinion that such dispute had resulted in a strike which, if permitted to continue, would affect a substantial part of the military aircraft engine industry, an industry engaged in trade, commerce, transportation, transmission or communication among the several States and with foreign nations, or engaged in the production of goods for commerce, and that such strike, if permitted to continue will imperil the national safety.

4. The Board of Inquiry so convened by the President inquired into the issues involved in the dispute and rendered its written report to the President.

5. Upon receipt of the report, the President, on December 1966, directed the Attorney General, pursuant to the provisions of Section 208 of the Act, to petition in the name of the United States any district court of the United States having jurisdiction of the parties to enjoin the strike, and for such other relief as may be necessary or appropriate.

6. Thereupon, on December 21st, 1966 the Attorney General brought this action on behalf of the United States of America.

7. This suit was instituted under the National Emergencies provisions of the Act, Sections 206–210 (29 U.S.C. §§ 176–180).

8. Copies of the verified complaint and annexed affidavit of the Deputy Secretary of Defense, together with copies of the Plaintiff's Motion for a Preliminary Injunction and supporting memorandum of law were served upon all defendants, who accepted service.

9. The threatened strike, if permitted to continue, will affect a substantial part of the military aircraft engine industry, which industry is engaged in trade, commerce, transportation, transmission or communications among the several states and with foreign nations, or in the production of goods for commerce.

10. The strike, if permitted to continue, will affect the National Safety, as follows:

(a) A customer of the Union Carbide Corporation is the sole producer of engines and certain spare parts for the F-4 (Phantom), the RF-4 (a reconnaisance version of the F-4) and F-104 aircraft. The F-4, used by both the Navy and the Air Force is the most modern tactical fighter available to our fighting forces today, and has been assigned to combat operations in Southeast Asia under the highest priority and is in constant and ever-increasing use to perform, a variety of combat missions such as strafing and bombing. The F-104 is a high altitude fighter cover aircraft and is also in constant use in Southeast Asian combat situations. The Stellite Division of the Union Carbide Corporation, Kokomo, Indiana, is the major producer of a certain high temperature special purpose metal alloy which is used to fabricate combustion liners. These combustion liners are manufactured and used by the manufacturer in the production of engines and spare parts therefor for the above mentioned aircraft. These combustion liners are required to enable the engine to perform under the extremely high temperatures generated by the burning of jet fuel and the special purpose metal alloy produced by the Stellite Division is essential to the manufacture of such combustion liners. As the only other producer of this metal alloy is already supplying other priority requirements, there is no source with available capacity sufficient to enable the jet engine manufacturer to produce the necessary combustion liners to meet its required delivery schedules for these engines and spare parts therefor. As a result of the current work stoppage, existing stocks of this material supplied by the Stellite Division, and necessary to continue the manufacture of

combustion liners, will shortly be exhausted. Since the manufacturer's production facilities for these engines are scheduled to operate at capacity and there is a need for uninterrupted production of combustion liners, there will result an unavoidable and irretrievable loss of essential engine and spare parts production to the detriment of our national safety.

(b) The Stellite Division of Union Carbide Corporation also produces turbine blades which are an essential part of the helicopter engines used to power the CH-53, CH-46 and SH3D helicopters. The CH-53 and CH-46 are used extensively by the Marines in combat operations in Southeast Asia. The SH3D is used in the Navy's antisubmarine warfare programs. The Stellite Division of Union Carbide Corporation produces turbine blade castings which are later machined and supplied to the engine producer. There is no alternate source from which a sufficient number of these castings can be obtained in time to meet the requirements for scheduled engine production. If the current work stoppage at the Stellite Division continues the requirements of the General Electric Company will not be met, thus seriously interfering with the production of these engines and spare parts therefor, to the detriment of our national safety.

(c) The Stellite Division of Union Carbide Corporation also supplies certain first and second stage turbine blades and vanes which are critical production components of helicopter engines for the UH-1 (Huey), and CH-47 (Chinook) helicopters. These helicopters form a vital part of the Army's combat force in Southeast Asia and are constantly used to perform a wide variety of missions including the transportation of troops, supplies and artillery into close combat situations and actual fire support of ground troops. As a direct result of the strike at the Stellite Division of the Union Carbide Corporation at Kokomo, Indiana, there are insufficient number of blades and vanes being delivered to accomplish rebuilding of old engines which are required as replacements for worn and combat damaged engines in Southeast Asia, and also to continue manufacture of new engines as scheduled. Since no other production sources can meet these requirements for blades and vanes, the work stoppage has resulted in an unavoidable and irretrievable loss of essential engine production for aircraft needed in Southeast Asia to the detriment of our national safety.

(d) The work stoppage at the Stellite Division of Union Carbide Corporation, Kokomo, Indiana, will result in an irretrievable loss of time in the supply of weapons systems essential to the national defense and security of the United States including, particularly, combat operations in Southeast Asia. There do not now exist any other sources from which sufficient quantities of the necessary material and parts can be obtained in time to assure our ability to maintain sufficient levels of the aircraft and helicopter engines referred to above in support of our military necessities.

11. The strike, if permitted to continue, will imperil the national safety and thereby cause irreparable damage and injury to the United States, for which there is no adequate remedy at law.

CONCLUSIONS OF LAW

1. This action was properly instituted under the National Emergencies provisions of the Labor Management Relations Act, 1947 (29 U.S.C. §§ 176–180).

2. The statutory provisions of Sections 206 to 208 (29 U.S.C. §§ 176–178) of the Act and all requirements contained therein, were in all respects duly and legally complied with, both prior to and in the commencement of this suit by the United States of America.

3. The Court has jurisdiction of the subject matter of this suit and of the parties.

4. The strike on the part of the union defendants does not constitute an exercise of the right of the individual employees to quit their labor as set forth in Section 502 of the Act (29 U.S.C. § 143).

5. The strike, if permitted to continue, will affect a substantial part of an industry engaged in trade, commerce, transportation, transmission and communication among the several States and with foreign nations, or engaged in the production of goods for commerce.

6. The strike, if permitted to continue, will imperil the national safety, and thereby cause irreparable injury to the United States of America, for which there is no adequate remedy at law.

7. Plaintiff, the United States of America, is entitled to the relief prayed for.